**Opinion issued September 18, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00704-CV
_____

**LEE ANN WHEELBARGER, Appellant**

**V.**

**CITY OF EL LAGO AND RICHARD SMITH, Appellees**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-58056-A**

---

## O P I N I O N

This appeal arises from a claim by appellant Lee Ann Wheelbarger that the

appellees, the City of El Lago and Richard Smith (sued in his official capacity

only), violated her constitutional right to due process in determining that a

condominium complex in which she owned a unit had been "substantially

damaged" by Hurricane Ike. She claimed that this determination, communicated in a letter to her condominium association, was made without affording her a hearing or an opportunity to appeal and that it led to the demolition of the complex by its private governing council. Finding that it lacked subject-matter jurisdiction, the trial court dismissed her claims.

We conclude that any controversy about the initial determination of substantial damage was rendered nonjusticiable because of subsequent events in which the City's Building Standards Commission declared the complex a nuisance and ordered it repaired or demolished. Accordingly, we affirm the dismissal of the suit.

## Background

Lee Ann Wheelbarger owned a condominium in a complex called The Landing, located in the City of El Lago on the north shore of Clear Lake. The Landing was governed by a condominium association known as the "Landing Council of Co-Owners." In the fall of 2008, Hurricane Ike made landfall. All parties agree that the storm's winds and waves damaged the complex, though they disagree about the extent of the harm.

Richard Smith, as the City's "Building Official," was responsible for reviewing construction permits for conformity with local zoning rules and building codes. The City's zoning regime allowed for "non-conforming uses," which are

2

defined by the zoning ordinance to include older structures (such as The Landing) that do not meet current building requirements but were grandfathered because they complied with the law when originally constructed. The El Lago zoning ordinances specified that no permit would issue to repair a non-conforming structure damaged to an extent greater than 51% of its market value unless the structure were renovated to conform to current standards.

After a lengthy investigation of damage caused by Hurricane Ike, Smith sent a letter to The Landing's condo association in July 2009, informing the owners of his determination that the complex had been "substantially damaged," meaning that it had been damaged in excess of 51% of its market value. Smith stated that he had yet to receive an application for a permit to conduct repairs, and any such application would be reviewed on its merits, but that his substantial-damage determination would "guide" his review.

The Landing had been built in the 1970s, and bringing it up to code would have required such substantial alterations to common areas that repairs would not be economically feasible. The Landing Council did not seek a permit and did not attempt repairs.

A group of condominium owners were dissatisfied with the Council's decision. Calling themselves the "Concerned Owners of the Landing Condominiums," they sent a letter entitled "NOTICE OF APPEAL" to Smith, the

mayor, and the city attorney. The letter requested an appeal of Smith's determination that the Landing had been "substantially damaged" and an opportunity to submit evidence. This group of owners did not include Wheelbarger. The City responded that because no permit application for repairs or construction had been submitted, no official action had been taken by the Building Official, and absent action on a permit application, no appeal was available.

Time passed and no steps were taken to repair the structures at The Landing. The City of El Lago Building Standards Commission held a hearing to determine whether The Landing complex should be declared a "Substandard Structure" subject to demolition as a public nuisance. The Commission heard evidence at a public hearing on April 26, 2010, and it concluded that the buildings at The Landing were substandard structures and a public nuisance. The Commission ordered the buildings' owner to apply for either a repair permit or a demolition permit within 30 days.

At the end of May 2010, the Landing Council decided to demolish the complex, and it sent a letter to unit owners informing them that they had until June 20 to remove their personal possessions. In response, the "Concerned Owners" regrouped as "Owners Supporting Options at the Landing Condominiums," and they sued both the Landing Council and the City of El Lago.

The Owners Supporting Options failed to prevent the demolition of The Landing, which was bulldozed in April 2011 by the Landing Council. While the Owners Supporting Options ultimately obtained a money judgment against the Landing Council, the City successfully moved for summary judgment on all claims against it.

Wheelbarger was not among the Owners Supporting Options. On the contrary, she served as a member of the board of directors of the Landing Council at the time of the hurricane, continuing through the time the lawsuit was filed.

Wheelbarger obtained a report from an engineering company on the cost and feasibility of repairing the complex. This report found that the complex had suffered only "relatively minor structural damages." Alleging that Wheelbarger had commissioned the report without authorization and that it incited litigation against the Council, the directors sued Wheelbarger as a third-party defendant in their ongoing litigation with the Owners Supporting Options. Wheelbarger filed counterclaims against the Landing Council and third-party claims against the City and Smith that mirrored the claims of the Owners Supporting Options.

Wheelbarger's petition against the City and Smith alleged that she was deprived of property without due process of law. She claimed that The Landing was destroyed because of Smith's determination that it was substantially damaged, that she was not given notice or an opportunity to be heard in regard to this finding,

and that she was not afforded an opportunity to appeal it. For these alleged due-process violations, she sought relief based on 42 U.S.C. § 1983 and the Texas Declaratory Judgment Act.

The City filed a traditional motion for summary judgment seeking dismissal of all of Wheelbarger's claims. The City argued that her claims were barred by res judicata and collateral estoppel based on the prior summary judgment entered in its favor against the Owners Supporting Options. It also claimed that Wheelbarger's claims failed as a matter of law because she did not have a property interest in a review of the substantial-damage determination. It further claimed that her case should be dismissed because she lacked standing, her claims were not ripe, and her claims were moot.

In addition, the City and Smith filed a plea to the jurisdiction arguing that governmental immunity barred Wheelbarger's claims. The trial court sustained the City's plea to the jurisdiction, and on the same day, it granted the motion for summary judgment. The order granting summary judgment did not state the grounds for the relief granted.

Wheelbarger filed a motion to sever her claims against the City and Smith from the rest of the litigation so that the trial court's orders would be final and appealable. In an "Agreed Order and Final Judgment," the trial court granted the motion to sever and dismissed her severed claims against the City and Smith for

lack of subject-matter jurisdiction. Wheelbarger then filed her notice of appeal from the final judgment entered against her.

**Analysis**

In her appellate brief, Wheelbarger argues that she has standing because the "substantial damage determination significantly affected the prospects for repair of her home" and "led to a notice of demolition and then actual demolition of her home."

"As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court." *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). "Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable." *Id.* If subject-matter jurisdiction is lacking, then a court must dismiss the case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012).

Standing is a legal question that appellate courts review de novo. *Heckman*, 369 S.W.3d at 149–50. "[B]ecause a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). As such, a court is not limited to

considering the accusations in the pleadings when determining a question of subject-matter jurisdiction. *See id.*

At the same time, the Supreme Court has cautioned that plaintiffs "should not be required to put on their case simply to establish jurisdiction." *Id.* If the evidence before the court creates a fact issue regarding jurisdiction, then the fact issue must await resolution by the fact-finder. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004). "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue," then the court must rule on the jurisdictional issue as a matter of law. *Id.* at 228.

Standing doctrine derives from the constitutional rule that Texas courts may only decide actual cases or controversies. *See Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998). There must be a real controversy between the parties that will be actually determined by the judicial declaration sought. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). The parties must be properly situated to be entitled to a judicial determination. *Id.*

Wheelbarger claims her condo was torn down because Smith, in a manner that denied her due process of law, determined that The Landing was substantially damaged. But even if Smith's July 2009 letter constituted an actionable determination regarding the property, Wheelbarger now lacks standing to

8

challenge it, because it was superseded by the findings and order of the Building Standards Commission concluding that the complex was a public nuisance and commanding that its owners either seek a repair permit or a demolition permit. *See id.*

In her brief Wheelbarger contends that the Commission "wrote [Smith's] determination into its order." Thus it is her position that any repair pursuant to that order would have had to satisfy the standards for substantially-damaged structures. However, the record does not indicate that the Commission deferred to Smith's determination or that it applied a presumption in favor of that outcome. On the contrary, before it made its decision, the Commission entertained evidence and testimony from stakeholders and public officials, including both Smith and Wheelbarger. The record does not indicate, nor does Wheelbarger argue, that Smith's letter foreordained the Commission's action, nor is there any suggestion that the validity of the Commission's order depended on the validity of Smith's initial determination.

Were a court to rule that Smith made his determination without affording Wheelbarger due process, the fact remains that The Landing would still have been subject to the Commission's repair-or-demolish order. *See Heckman*, 369 S.W.3d at 155–56 (in order to establish standing, plaintiff must establish a "substantial likelihood that the requested relief will remedy the alleged injury in fact").

Wheelbarger lacks standing to challenge Smith's determination because a judicial finding in her favor would not affect the validity of the Commission's unchallenged order. *See id.*

As a subissue to her due process claim, Wheelbarger also argues that she had a right to appeal Smith's determination under the City's code of ordinances, EL LAGO, TEX., CODE OF ORDINANCES § 7-24, the Texas Local Government Code, TEX. LOC. GOV'T CODE ANN. § 211.010 (West 2008), a FEMA "RSDE Field Workbook," and constitutional due process. She contends that the City and Smith "refused" to permit any appeal of the determination to the Board of Adjustment or otherwise. In support, she relies upon the City's November 24, 2009 letter to the Concerned Owners of the Landing Condominiums in which it explained that the Concerned Owners request for an appeal was "not timely."

Wheelbarger was not a member of the Concerned Owners and not a party to the "Notice of Appeal" they mailed to Smith, the mayor, and the city attorney on October 16, 2009. Likewise, she was not a party to the City's November 24, 2009 response letter in which it allegedly "refused" to permit an appeal. *See Heckman*, 369 S.W.3d at 156 (holding that issues of standing require "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted"). Moreover, the letter of the Concerned Owners was not addressed to the Board of Adjustment,

10

and it is with the Board of Adjustment that Wheelbarger claims she had a right to appeal under the Local Government Code and city ordinances. *See id.* Since Wheelbarger never sought to appeal, she is not someone "personally aggrieved" by the City's alleged refusal to permit an appeal. *See id.*; *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). As there exists no "real controversy" between the parties in this regard, Wheelbarger lacks standing to claim that Smith or the City wrongly denied her an appeal. *See Austin Nursing Ctr.*, 171 S.W.3d at 849.

Wheelbarger also argues, in the alternative, that if the trial court did lack subject-matter jurisdiction over her claims, that it nonetheless should not have entered a merits-based summary judgment in favor of the City. While Wheelbarger is correct that a court without subject-matter jurisdiction should not rule on the merits of a case, *see Bland*, 34 S.W.3d at 554, the order granting summary judgment in this case did not specify its grounds. The City's motion for summary judgment presented both merits-based grounds and jurisdictional grounds, including standing. Furthermore, the trial court later entered an "Agreed Order and Final Judgment" dismissing Wheelbarger's claims because "this Court does not possess subject matter jurisdiction over these claims." "When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment

grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000). Because standing was a ground presented by the City's summary-judgment motion, the trial court did not err in granting summary judgment in favor of the City.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack, and Justices Jennings and Massengale.