**Opinion issued March 14, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00347-CV

————————————

### HASSAN CHAHADEH, M.D., Appellant

### V.

### JACINTO MEDICAL GROUP, P.A. AND PARADISE MARKETING AND CONSULTING, L.P., Appellees

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-44173**

---

## O P I N I O N

Hassan Chahadeh, M.D., personally guaranteed loans made by Jacinto Medical Group, P.A. and Paradise Marketing and Consulting, L.P. to University General Health System Inc. and University General Hospital, L.P. (collectively "UGH"). Subsequently, UGH defaulted on the loans and filed for Chapter 11

bankruptcy protection. Appellees sent notice and demand to Chahadeh requesting payment under the guaranty agreements, but Chahadeh did not pay. Appellees sued Chahadeh for breach of the guaranty agreements and filed a traditional summary-judgment motion, which the trial court granted.

In his sole issue on appeal, Chahadeh argues that the trial court erred by granting summary judgment because the bankruptcy court has exclusive jurisdiction over appellees' claims against him and the summary-judgment evidence did not conclusively establish the amount of his liability. We affirm.

## Background

### *The promissory notes & guaranty agreements*

Chahadeh is the CEO of University General Health System Inc. and the Chairman of University General Hospital, LP. In February 2014, Jacinto loaned University General Health System Inc. $1,400,000 under the terms of a promissory note. At the same time, Paradise made two loans to University General Hospital, L.P.—one in the amount of $360,000 and one in the amount of $457,979.81—under the terms of two corresponding promissory notes.

The dispute in this case centers on two guaranty agreements that Chahadeh executed personally guaranteeing the three promissory notes. One guaranteed payment of the Jacinto promissory note, and the other guaranteed payment of the

2

two Paradise promissory notes. In both guaranty agreements, Chahadeh agreed to

pay any amounts due under the promissory notes if UGH[1] defaulted on them:

> In the event of default by [UGH] in payment or performance of the Guaranteed Indebtedness, or any part thereof . . . [Chahadeh] shall promptly pay the amount due hereunder . . . within two (2) business days after notice and demand."

The agreements provided that they were guarantees of payment, not collection:

> This instrument shall be an absolute, continuing, irrevocable, and unconditional guaranty of payment and performance, and not a guaranty of collection . . . .

They also provided that Chahadeh could not assert a setoff or reduction defense to a

demand for payment:

> No setoff, counterclaim, recoupment, reduction, or diminution of any obligation, or any defense of any kind or nature which [UGH] may have against Lender or any other party, or which Guarantor may have against [UGH], Lender, or any other party, shall be available to, or shall be asserted by, Guarantor against Lender . . . or against payment of the Guaranteed Indebtedness or any part thereof.

In addition, Chahadeh agreed that his obligation would not be diminished if UGH

declared bankruptcy:

> Guarantor hereby agrees that its obligations under this Guaranty Agreement shall not be released, discharged, diminished, impaired, reduced, or affected for any reason or by the occurrence of any event, including . . . any disability of [UGH], or the dissolution, insolvency, or bankruptcy of [UGH].

---

[1] The guaranty agreements are substantively identical.

*UGH declares bankruptcy*

In February 2015, UGH and affiliated companies filed a voluntary petition seeking Chapter 11 bankruptcy protection.  Appellees filed claims in the bankruptcy proceeding for the amounts UGH owed them under the three promissory notes and other agreements.  Appellees later sent notice and demand to Chahadeh for payment under the guaranty agreements, but he refused to pay.

*The underlying lawsuit*

Appellees sued Chahadeh for breach of the two guaranty agreements.  After discovery, appellees moved for summary judgment and supported the motion with evidence, including copies of the three promissory notes, the two guaranty agreements, the demand letter, and Chahadeh's responses to their requests for admission.  They also submitted the affidavit of Siraj Jiwani, the Chief Executive Officer of Jacinto and the Vice President of Paradise, who averred that UGH defaulted on the promissory notes, payment under the guaranty agreements was demanded from Chahadeh, and he had not paid.  Jiwani's affidavit also set forth the total unpaid guaranteed indebtedness owed by Chahadeh under each of the two guaranty agreements and the amount of interest accruing on each per day.  Chahadeh responded and argued that summary judgment was improper because the bankruptcy court had exclusive jurisdiction over appellees' claims against him.  The trial court granted summary judgment.  Chahadeh appealed.

**Discussion**

Chahadeh argues that the trial court lacked jurisdiction because appellees' filing of a proof of claim in the bankruptcy court vested that court with exclusive jurisdiction over their claims against him. Chahadeh also contends that the trial court erred in granting summary judgment in appellees' favor because appellees' summary-judgment evidence regarding damages was self-contradictory and therefore did not conclusively establish the amount of his liability.

**A.  Standard of Review**

"We review a trial court's summary judgment de novo." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). "We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

When reviewing a summary judgment, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* In a traditional summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV.

5

P. 166a(a), (c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the movant meets its summary-judgment burden, the burden shifts to the nonmovant, who bears the burden to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet).

## B.     Applicable Law

A guaranty is a promise to a creditor by a third party to pay a debt on behalf of a principal in the event that the principal defaults on the original obligation. *See Republic Nat'l Bank of Dallas v. Nw. Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 114 (Tex. 1978). To support a claim for breach of a guaranty, a party must show proof of (1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform by the guarantor. *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720 (Tex. App.—San Antonio 2004, no pet.).

"The law recognizes two distinct types of guaranty: a guaranty of collection (or conditional guaranty) and a guaranty of payment (or unconditional guaranty)." *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (first citing *Universal Metals & Mach., Inc. v. Bohart*, 539 S.W.2d 874, 877 (Tex. 1976); then citing *United States v. Vahlco Corp.*, 800 F.2d 462, 465 (5th Cir.

1986); then citing *Ford v. Darwin*, 767 S.W.2d 851, 854 (Tex. App.—Dallas 1989, writ denied)).  A guaranty of collection is an undertaking of the guarantor to pay if the debt cannot be collected from the primary obligor by the use of reasonable diligence, and requires the lender to pursue the principal debtor before collecting. *Id.*  In contrast, a guaranty of payment is an obligation to pay the debt when due if the debtor does not and requires no condition precedent to its enforcement against the guarantor other than a default by the principal debtor.  *Id.*  Unlike a guarantor of collection, a "guarantor of payment is *primarily* liable and waives any requirement that the holder of the note take action against the maker as a condition precedent to his liability on the guaranty."  *Id.* (citing *Hopkins v. First Nat'l Bank at Brownsville*, 551 S.W.2d 343, 345 (Tex. 1977) (per curiam)).  "A guarantor of payment is thus akin to a co-maker in that the holder of the note can enforce it against either party."  *Id.* (citing *Reece v. First State Bank*, 566 S.W.2d 296, 297 (Tex. 1978)).

The terms of a guaranty agreement determine whether the guaranty is a guaranty of collection or of payment.  *See Berry v. Encore Bank*, No. 01-14-00246-CV, 2015 WL 3485970, at *2, *5 (Tex. App.—Houston [1st Dist.] June 2, 2015, pet. denied) (mem. op.) (citing *Yamin v. Conn, L.P.*, No. 14-10-00597-CV, 2011 WL 4031218, at *6 (Tex. App.—Houston [14th Dist.] Sept. 13, 2011, no pet.) (mem. op.)).  When construing a guaranty agreement, our primary goal is to ascertain and give effect to the parties' intent. *Id.* (first citing *Coker v. Coker*, 650 S.W.2d 391,

7

393 (Tex. 1983); then citing *Hasty v. Keller HCP Partners, L.P.*, 260 S.W.3d 666, 670 (Tex. App.—Dallas 2008, no pet.)). Where the language is clear and unambiguous, the best guide to the parties' intent is the language of the guaranty. *Id.* (first citing *Univ. Sav. Ass'n v. Miller*, 786 S.W.2d 461, 462–63 (Tex. App.—Houston [14th Dist.] 1990, writ denied); then citing *Sw. Sav. Ass'n v. Dunagan*, 392 S.W.2d 761, 767 (Tex. App.—Dallas 1965, writ ref'd n.r.e.)). We strictly construe a guaranty in favor of the guarantor. *Cox*, 949 S.W.2d at 530.

## C. Did the trial court lack jurisdiction over appellees' claims against Chahadeh?

Because it implicates our own jurisdiction, we first address Chahadeh's argument that appellees' filing of a proof of claim in the bankruptcy court vested that court with exclusive jurisdiction over appellees' claims against Chahadeh. Bankruptcy courts have "original and exclusive" jurisdiction over all cases "under title 11," but have only "original but not exclusive" jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). Thus, the only aspect of a bankruptcy proceeding over which the bankruptcy court has exclusive jurisdiction is the bankruptcy petition itself. *In re Walker*, 51 F.3d 562, 568 (5th Cir. 1995); *Matter of Brady, Tex., Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir. 1991) (quoting *In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987)). State courts have concurrent jurisdiction over any other matters that arise in or relate to cases under title 11. *Brady*, 936 F.2d at 218.

While appellees' suit against Chahadeh is arguably "related to" UGH's bankruptcy petition, the bankruptcy court does not have exclusive jurisdiction over a suit that is merely "related to" a bankruptcy petition. *See* 28 U.S.C. § 1334(b); *Brady*, 936 F.2d at 218; *see also Novosad v. Cunningham*, 38 S.W.3d 767, 770 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Rather, it is well-settled that state courts have concurrent jurisdiction over proceedings "related to" a bankruptcy petition. 28 U.S.C. § 1334(b); *Brady*, 936 F.2d at 218; *see also Novosad*, 38 S.W.3d at 770 (automatic bankruptcy stay ordinarily does not extend to actions against parties other than debtor, including guarantors). Accordingly, the bankruptcy court did not have exclusive jurisdiction over appellees' claims against Chahadeh.

The cases that Chahadeh cites do not support his argument to the contrary. These cases stand for the propositions that the bankruptcy court has exclusive jurisdiction over proceedings that only arise in bankruptcy, to allow or disallow claims against the *debtor's* estate. *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (bankruptcy court has exclusive jurisdiction over allowance and disallowance of bankruptcy claims against debtor); *In re Wood*, 825 F.2d at 97 (bankruptcy court has exclusive jurisdiction over "core" proceedings, i.e., proceedings that by their nature only arise in bankruptcy); *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 630 (Tex. App.—San Antonio 1996, writ denied) (bankruptcy court has exclusive jurisdiction over allowance and disallowance of bankruptcy claims against

9

debtor). Chahadeh is not the bankruptcy debtor, and appellees' suit for breach of the guaranty agreements is not a proceeding that only arises in bankruptcy. In short, Chahadeh provides no authority to support his claim that the trial court lacked jurisdiction to decide appellees' breach of guaranty claims.

Chahadeh also contends that his liability under the guaranty agreements could not be conclusively established until the bankruptcy court determines UGH's liability on the underlying promissory notes. Chahadeh contends that his liability could be reduced or discharged if UGH's liability on the underlying promissory notes is reduced or discharged by the bankruptcy court. But Chahadeh's liability under the guaranty agreements is a separately enforceable obligation. *See Cox*, 949 S.W.2d at 530. Chahadeh expressly agreed that his obligation would not be reduced or discharged, even if UGH declared bankruptcy:

> Guarantor hereby agrees that its obligations under this Guaranty Agreement shall not be released, discharged, diminished, impaired, reduced, or affected for any reason or by the occurrence of any event, including . . . any disability of [UGH], or the dissolution, insolvency, or bankruptcy of [UGH].

The sole case Chahadeh relies upon to support his argument, *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109 (Tex. 1978), does not address a guaranty like Chahadeh's, which provides that he is primarily liable for the debt and that his obligation would not be diminished if UGH declared bankruptcy. *See Cox*, 949 S.W.2d at 530. Under the terms of the guaranty

10

agreements, Chahadeh may be held independently liable for the amount of the outstanding debts under the promissory notes without regard to the outcome of the bankruptcy proceeding. *See id.*; *see also Berry*, 2015 WL 3485970, at *5 (court construes terms of guaranty like any other contract to give effect to intent of drafters).

In sum, the trial court had jurisdiction over appellees' claims against Chahadeh, *see Brady*, 936 F.2d at 218, and Chahadeh may be held independently liable for the amount of the outstanding debts under the terms of the guaranty agreements without regard to the outcome of the bankruptcy proceeding.[2] *See Cox*, 949 S.W.2d at 530; *Brady*, 936 F.2d at 218; *see also GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 717 (5th Cir. 1985) (preventing lender from pursuing claim against guarantor of debt because debtor had filed bankruptcy petition would be "legally inequitable").

**D. Did appellees meet their burden to conclusively establish their breach of guaranty claims?**

Appellees filed a traditional motion for summary judgment on their breach of guaranty claims. The elements of a breach of guaranty claim are: of (1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract by the

---

[2] Appellees' recovery could be limited by the single satisfaction rule, however. *See In re Wash. Bancorporation*, No. 90-00597, 1996 WL 148533, at *16–17 (D.D.C. Mar. 19, 1996) (no double recovery allowed).

11

holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform by the guarantor. *See Lee*, 141 S.W.3d at 720. Appellees' summary-judgment evidence included a copy of the two guaranty agreements executed by Chahadeh, one personally guaranteeing payment of the Jacinto promissory note and the other the two Paradise promissory notes. The agreements expressly provided that they were guarantees of payment and not collection. Each stated:

> This instrument shall be an absolute, continuing, irrevocable, and unconditional guaranty of payment and performance, and not a guaranty of collection . . . .

Chahadeh agreed that he could not assert a setoff or reduction defense:

> No setoff, counterclaim, recoupment, reduction, or diminution of any obligation, or any defense of any kind or nature which [UGH] may have against Lender or any other party, or which Guarantor may have against [UGH], Lender, or any other party, shall be available to, or shall be asserted by, Guarantor against Lender . . . or against payment of the Guaranteed Indebtedness or any part thereof.

Chahadeh also agreed that his obligation would not be diminished if UGH declared bankruptcy:

> Guarantor hereby agrees that its obligations under this Guaranty Agreement shall not be released, discharged, diminished, impaired, reduced, or affected for any reason or by the occurrence of any event, including . . . any disability of [UGH], or the dissolution, insolvency, or bankruptcy of [UGH].

The agreements provided that if UGH defaulted, Chahadeh would "promptly pay the amount due hereunder . . . within two (2) business days after notice and demand."

The summary-judgment evidence also included an affidavit from Jiwani, the Chief Executive Officer of Jacinto and the Vice President of Paradise. Jiwani averred that UGH had defaulted on the three promissory notes secured by Chahadeh's two guaranty agreements. Jiwani averred that Jacinto and Paradise sent Chahadeh a written notice of default demanding that he pay the outstanding balances under the two guaranty agreements, but Chahadeh had not made any payments after this demand. Jiwani averred that the total unpaid guaranteed indebtedness owed by Chahadeh as of October 15, 2015 was $1,398,561.64 under the Jacinto guaranty and $920,267.48 under the Paradise guaranty. Jiwani further averred that interest was accruing at the rate of $616.44 per day under the Jacinto guaranty, and $393.52 per day under the Paradise guaranty.

Appellees also submitted copies of the three promissory notes and a copy of their demand letter to Chahadeh. In addition, the summary-judgment evidence included Chahadeh's responses to appellees' requests for admission, in which he admitted that he had received the demand letter but had not paid.

Consequently, appellees' summary-judgment evidence conclusively established the existence of the guaranty agreements in which Chahadeh had agreed to pay upon demand if UGH defaulted. *See Lee*, 141 S.W.3d at 720. The evidence also conclusively established that UGH defaulted on the loans, that appellees had demanded payment from Chahadeh, and that he had not paid. *See id.* Further, the

13

evidence conclusively established the amount Chahadeh owed under the two guaranty agreements: $1,398,561.64 under the Jacinto guaranty as of October 15, 2015 with interest accruing at a rate of $616.44 per day, and $920,267.48 under the Paradise guaranty as of October 15, 2015 with interest accruing at a rate of $393.52 per day.[3] Accordingly, appellees conclusively proved the essential elements of their breach of guaranty claims. *See id.*

Chahadeh contends that summary judgment was improper because he raised a fact issue regarding whether the summary-judgment evidence conclusively established the amount that he owed under the guaranty agreements. Specifically, Chahadeh argues that Jiwani's averment regarding the amount Chahadeh owed under the Paradise guaranty—$920,267.48—was lower than the amount Paradise sought in its bankruptcy claim—$1,217,979.81. Chahadeh argues that this discrepancy raises a fact issue that precludes summary judgment. Appellees respond that the difference between the two figures is the amount that UGH owes Paradise under profit-sharing agreements for which Chahadeh did not guarantee payment.

---

[3] The trial court's judgment awarded damages as of December 11, 2015, 57 days after October 15, 2015, in the amount of $2,376,396.84. This is the sum of:

| | |
|---|---|
| $1,398,561.64 | Owed on Jacinto guaranty as of 10/15/15 |
| $920,267.48 | Owed on Paradise guaranty as of 10/15/15 |
| $35,137.08 ($616.44 x 57) | Daily interest on Jacinto guaranty x 57 days |
| + $22,430.64 ($393.52 x 57) | Daily interest on Paradise guaranty x 57 days |
| **$2,376,396.84** | |

14

The summary-judgment evidence shows that there is no conflict between Jiwani's affidavit and the Paradise bankruptcy claim. The difference between the amount of Paradise's bankruptcy claim and the amount Jiwani averred Chahadeh owed Paradise is comprised of the amount allegedly owed to Paradise by UGH under profit-sharing agreements that Chahadeh did not guarantee. Jiwani averred that Chahadeh owed $920,267.48 under the Paradise guaranty, which was composed of $797,979.81 in principal and $122,287.67 in accrued interest. Paradise's bankruptcy claim shows that the $1,217,979.81 it sought from UGH was composed of the $797,979.81 in principal owed under the two promissory notes plus $420,000 owed under profit-sharing agreements. Chahadeh guaranteed the two promissory notes, but not the profit-sharing agreements. Accordingly, we conclude that Chahadeh did not raise a fact issue and the trial court did not err by concluding that the summary-judgment evidence conclusively established the amount that Chahadeh owed. *See* TEX. R. CIV. P. 166a(a), (c); *KPMG*, 988 S.W.2d at 748; *Lujan*, 433 S.W.3d at 704.

We overrule Chahadeh's sole issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

15

Panel consists of Justices Keyes, Bland, and Huddle.