**Opinion issued August 22, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00013-CV

———————————

**BRAD JONES, Appellant**

**V.**

**REESE BAKER, D/B/A BAKER & ASSOCIATES, Appellee**

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-02789**

---

## MEMORANDUM OPINION

Reese Baker, d/b/a Baker & Associates, sued Brad Jones to recover unpaid attorney's fees incurred on behalf of Jones's company, Exquisite Designs, in its bankruptcy proceeding. Jones claims on appeal Baker did not prove the reasonableness and necessity of the attorney's fees, that there were errors in the

amount of damages and prejudgment interest awarded, and that recovery of some of the attorney's fees was barred by limitations. For the reasons discussed below, we reverse and remand the award of prejudgment interest, modify the judgment to correct a calculation error in the amount of damages, and affirm the remainder of the judgment as modified.

## BACKGROUND

Exquisite Designs retained Baker to represent it in a Chapter 11 bankruptcy proceeding in 2012. Jones, the president and sole shareholder of Exquisite Designs, signed two agreements at that time.

He signed an engagement agreement on behalf of Exquisite Designs, detailing the terms of Baker's legal representation and Exquisite Designs' payment obligations. Under that agreement, Exquisite Designs was to pay an initial retainer and then a monthly deposit of $750.

Jones also signed a personal guaranty agreement in his individual capacity. Under that agreement, he agreed to be personally responsible for any debt incurred by Exquisite Designs under the engagement agreement. Jones also waived any right to require Baker to pursue payment from Exquisite Designs before seeking payment from him personally.

Baker represented Exquisite Designs in its bankruptcy proceeding and obtained the bankruptcy court's confirmation of a Chapter 11 reorganization plan.

2

On January 23, 2014, the bankruptcy court issued an order approving Baker's application for attorney's fees he had incurred up to that time. The bankruptcy court's order approved a total of $105,850.27 in attorney's fees—the parties call these the "pre-confirmation fees" because they were incurred before the bankruptcy court's confirmation of the reorganization plan.

As there were still ongoing issues in the bankruptcy proceeding, Baker continued to represent Exquisite Designs. He incurred $43,012.31 in additional attorney's fees—the parties call these the "post-confirmation fees" because they were incurred after the bankruptcy court's confirmation of the bankruptcy reorganization plan.

Baker testified at trial that he asked to withdraw from representing Exquisite Designs because he was not being paid. He did not receive any payments after January 2013, despite Exquisite Designs' obligation to make monthly payments, but he continued to represent Exquisite Designs until the bankruptcy court approved his withdrawal in August 2014.

On June 6, 2014, after Baker had asked to withdraw but before the bankruptcy court approved the withdrawal, Baker sent a demand letter to "Exquisite Designs c/o Brad Jones." The demand letter stated:

Dear Mr. Jones:

The following is a recap of the services rendered regarding your legal issues. Demand is made for the immediate payment of our fees and

3

expenses. The amounts due to our firm are past due. If payment is not made immediately, we will pursue actions for collection.

The demand letter then listed the amount of pre-confirmation fees, the amount of post-confirmation fees, and the amount paid to date. Neither Exquisite Designs nor Jones made any payments to Baker following the demand letter.

Baker filed suit in January 2018 against Jones, individually, claiming a sworn account and breach of contract. After a bench trial, the trial court entered findings of fact and conclusions of law. The trial court generally found that: Baker had represented Exquisite Designs in the bankruptcy proceeding; Jones signed the guaranty agreement agreeing to be financially responsible for Exquisite Designs' debt; Baker had made a demand for fees in the amount of $141,612.58; Jones was entitled to a credit of $9,750 for payments already made; and Baker timely filed suit. The trial court concluded Jones was liable to Baker for a total of $139,612.58, and it entered a final judgment awarding Baker that amount in unpaid attorney's fees and $48,717.43 in prejudgment interest. Jones now appeals.

## DISCUSSION

### Attorney's Fees

In his first issue, Jones argues there is no evidence or factually insufficient evidence to support the reasonableness and necessity of the pre-confirmation or post-confirmation attorney's fees.

4

*Applicable Law*

An attorney "may recover unpaid hourly fees for professional services rendered" in a breach-of-contract suit. *McRay v. Dow Golub Remels & Beverly, LLP*, 554 S.W.3d 702, 705 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A guaranty agreement is a type of contract that creates a secondary obligation in which the guarantor promises to be responsible for the principal's debt. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 258 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599, 605 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

An attorney has a professional responsibility not to charge an unconscionable fee; in other words, an attorney's fees must be reasonable. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A. ("A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable."). Although this professional responsibility does not create civil liability for the attorney, the attorney's breach-of-contract remedy for unpaid fees is subject to this requirement that the fees be reasonable. *See McRay*, 554 S.W.3d at 705; *see also Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 n.6 (Tex. 2006) (acknowledging disciplinary rules of conduct do not create civil liability but nonetheless imposing prohibition

5

against charging unconscionable fee to attorney's contingent-fee agreement). Whether attorney's fees are reasonable and necessary is a question of fact. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019).

The lodestar method of calculating attorney's fees is an objective analysis of whether attorney's fees are reasonable and necessary and provides a base figure that is "presumptively reasonable." *Id.* at 496. Under the lodestar method, the court determines the reasonable hours spent by counsel in a case and the reasonable hourly rate for that work, then multiples the number of hours by the applicable rate. *Id.* at 494. This number is the base fee or lodestar. *Id.* The court may then adjust the number up or down "if relevant factors indicate an adjustment is necessary." *Id.*

Previously, courts in Texas employed the *Arthur Andersen* factors to determine the reasonableness and necessity of attorney's fees. *See id.* at 493; *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).[1] But the Texas Supreme Court has made clear that the lodestar method is a

---

[1]    The *Arthur Andersen* factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;

6

"short hand version" of the *Arthur Andersen* factors, and the lodestar method yields a "base figure that reflects most *Arthur Andersen* factors." *Rohrmoos*, 578 S.W.3d at 496. We need not engage in a separate analysis of the *Arthur Anderson* factors when we can employ the lodestar method. *See id.* The lodestar method has "an expansive application [that is] to be used when evidence of reasonable hours worked multiplied by reasonable hourly rates can provide an objective analytical framework that is presumptively reasonable." *Id.* at 495.

The fee claimant bears the burden of providing sufficient evidence of the reasonable hours worked and a reasonable hourly rate, which includes, "at a minimum," evidence of: "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 498. Contemporaneous billing

---

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen*, 945 S.W.2d at 818.

7

records, though not necessary, "are *strongly* encouraged to prove the reasonableness and necessity of requested fees." *Id.* at 502.

*Standard of Review*

"In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence supporting the fact findings by using the same standards to review jury verdicts." *Ferrara v. Nutt*, 555 S.W.3d 227, 235 (Tex. App.—Houston [1st Dist.] 2018, no pet.). When, as here, a complete reporter's record is filed, the trial court's findings of fact are not conclusive. *Id.*

When a party challenges the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof at trial, that party must demonstrate there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a no-evidence challenge if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *King Ranch, Inc.*

8

*v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the factfinder's decision and indulge every reasonable inference that would support it. *See Wilson*, 168 S.W.3d at 822. The factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *See id.* at 819. We may not impose our own opinion to the contrary. *Id.* "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

When a party challenges the factual sufficiency of an adverse finding on an issue for which it did not have the burden of proof at trial, "we consider and weigh all of the evidence and set aside the [judgment] only if the evidence that supports the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust." *Figueroa v. Davis*, 318 S.W.3d 53, 59 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Again, the factfinder is the sole judge of the witnesses' credibility and the weight to give their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

9

*Analysis*

*1. Pre-confirmation Fees*

Jones argues that Baker provided no testimony or evidence regarding the reasonableness or necessity of the pre-confirmation fees other than the bankruptcy court's order approving attorney's fees. However, the bankruptcy court's order is more than a scintilla of evidence of reasonable and necessary attorney's fees. *See Wilson*, 168 S.W.3d at 810; *Chapman*, 118 S.W.3d at 751. The bankruptcy court's order states that it considered the *Arthur Anderson* factors[2] and concluded that the expenses Baker incurred on behalf of Exquisite Designs were "reasonable and necessary." The bankruptcy court determined the pre-confirmation fees were reasonable, and even if there were error, we have no authority to review the bankruptcy court's order. *See Owsley v. Owsley*, No. 13-18-00636-CV, 2022 WL 16842689, at *6 & n.6 (Tex. App.—Corpus Christi–Edinburg Nov. 10, 2022, no pet.) (mem. op.) (concluding appellant must pay attorney's fees pursuant to bankruptcy court's order because state court has no jurisdiction to review bankruptcy court's error); *In re C.C.*, No. 02-17-00058-CV, 2017 WL 4819407, at *2 (Tex. App.—Fort Worth Oct. 26, 2017, no pet.) (mem. op.) (citing bankruptcy rules

---

[2]    The bankruptcy court's order was issued in 2014, well before the Texas Supreme Court's 2019 opinion in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP* strongly indicating a preference for the lodestar method over the *Arthur Andersen* factors. *See* 578 S.W.3d at 493–96.

10

regarding appeal of bankruptcy court's order and explaining state court has no jurisdiction to review bankruptcy court's error). Therefore, there is legally sufficient evidence that the pre-confirmation fees were reasonable and necessary. *See Wilson*, 168 S.W.3d at 810; *Chapman*, 118 S.W.3d at 751.

There is no evidence controverting the reasonableness or necessity of the pre-confirmation fees as awarded in the bankruptcy court's order, nor would we have authority to review the order for error even if there were. *See Owsley*, 2022 WL 16842689, at *6 & n.6; *In re C.C.*, 2017 WL 4819407, at *2. Thus, weighing all of the evidence, we cannot say the finding of reasonableness and necessity is so weak as to make the judgment clearly wrong and manifestly unjust. *See Figueroa*, 318 S.W.3d at 59. Therefore, there is factually sufficient evidence to support the reasonableness of the pre-confirmation fees. *See id.*

### 2. *Post-confirmation Fees*

Jones also argues that Baker's testimony regarding the invoice he provided for post-confirmation fees was conclusory, vague, and general. He further argues that, because the trial court rejected Baker's proposed finding that the post-confirmation fees were reasonable and necessary, we may not presume the trial court made such a finding. *See* Tex. R. Civ. P. 299; *Vickery v. Comm'n for Law. Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[W]here the trial court has been specifically requested to make a particular finding

in support of its judgment and it fails to do so, the failure is tantamount to a refusal. Thus, the presumption of validity will not supply by implication a missing element that has been specifically 'requested.'" (citation omitted)). But there is more than a scintilla of evidence to support the reasonableness and necessity of Baker's post-confirmation fees, even in the absence of that presumption.

Baker offered into evidence an invoice for the post-confirmation fees. This invoice details the particular services that were performed, including who performed them, the date they were performed, the hourly rate for the person performing the services, and the amount of time for each service. Thus, the invoice demonstrates the minimum evidence sufficient to establish a base lodestar figure. *See Rohrmoos*, 578 S.W.3d at 496, 498. The rates charged in the invoice are the same rates stated in the engagement agreement, and these are the rates the bankruptcy court already determined to be reasonable. In addition, Baker testified that the bankruptcy case "was a very difficult case," with multiple parties raising objections and continued activity even after the bankruptcy court confirmed the Chapter 11 reorganization plan. He also stated that his rates were "very normal in the bankruptcy court," "right in line with other fees," and "[i]n fact, . . . probably on the low side for somebody who is board certified in both consumer and business law," as he is.

Construing Baker's testimony in the light most favorable to the trial court's judgment, *Wilson*, 168 S.W.3d at 822, we can infer that Baker's rates, which he

12

claimed were normal, right in line with other fees, and even on the low side, were reasonable and that the hours he worked were necessary, given his detailed billing records, the results he obtained—confirmation of the Chapter 11 reorganization plan, and the complexity of the case, which he claimed "was a very difficult case." Baker did not use the exact words "reasonable" or "necessary" to describe his fees, but had he merely labeled them reasonable and necessary, that testimony would have been conclusory. Instead, Baker explained why his fees were reasonable—they were in line with other attorney's fees and even on the low side for someone with his expertise—and necessary—the bankruptcy proceeding was complicated and obtaining confirmation of a Chapter 11 reorganization plan was difficult. Thus, there is more than a scintilla of evidence that the post-confirmation fees were reasonable and necessary, so there is legally sufficient evidence. *See Wilson*, 168 S.W.3d at 810; *Chapman*, 118 S.W.3d at 751.

Baker's testimony and the invoice provide much stronger evidence supporting the reasonableness and necessity of attorney's fees than in cases in which the Texas Supreme Court concluded the evidence was insufficient. *See, e.g.*, *Rohrmoos*, 578 S.W.3d at 505 (reversing attorney's fee award because attorney's testimony that he searched millions of emails and reviewed hundreds of thousands of papers, "[w]ithout detail about the work done, how much time was spent on the tasks, and how he arrived at the $800,000 sum," lacked substance required to uphold attorney's

fee award); *Long v. Griffin*, 442 S.W.3d 253, 255–56 (Tex. 2014) (per curiam) (reversing attorney's fee award where evidence in support of attorney's fee request "only offer[ed] generalities" and did not indicate attorneys' time spent on specific tasks); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam) (reversing attorney's fee award because attorney's "testimony that he spent 'a lot of time getting ready for the lawsuit,' conducted 'a lot of legal research,' visited the [condemned] premises 'many, many, many, many times,' and spent 'countless' hours on motions and depositions [was] not evidence of a reasonable attorney's fee under lodestar"); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763–64 (Tex. 2012) (reversing attorney's fee award because attorneys did not present time records and instead "based their time estimates on generalities such as the amount of discovery in the case, the number of pleadings filed, the number of witnesses questioned, and the length of the trial," which did not provide "specificity needed" to make meaningful lodestar determination).

Jones argues that simply charging the hourly rate stated in a fee agreement is insufficient to establish reasonableness, citing *McRay v. Dow Golub Remels & Beverly, LLP*, 554 S.W.3d at 706–07. In that case, however, the law firm did not offer any evidence that the time it billed was reasonable, and the client provided expert testimony that the amount of attorney's fees sought was not reasonable. *Id.* at 705–06. Thus, this court could not affirm summary judgment in favor of the law firm

14

because it did not conclusively establish the amount of reasonable attorney's fees in light of the controverting evidence. *Id.* at 706. The law firm then argued it did not need to establish the reasonableness of its fees because the invoices showed the law firm only charged the hourly rate set forth in its fee agreement. *Id.* This court stated that an invoice alone was not sufficient to establish the reasonableness of the overall fees. *Id.* at 706–07. In the present case, however, Baker's testimony provided more than an invoice alone to establish the reasonableness of his fees, and Jones provided no evidence controverting the reasonableness.[3]

As for factual sufficiency, there was no evidence controverting the reasonableness or necessity of the post-confirmation fees. Jones, representing himself at trial, did not question the reasonableness of the rates charged or hours worked or in any way dispute the information in the invoice. *Cf. Webb v. Crawley*, 590 S.W.3d 570, 581 (Tex. App.—Beaumont 2019, no pet.) (affirming implied finding that attorney's fees were not reasonable because associate testified she never drafted documents for which client was billed and client was billed for more time than associate spent on specific tasks). Thus, weighing all of the evidence, we cannot

---

[3]    The court in *McRay* noted that if the law firm had sued on a sworn account, it could have established a prima facie right of recovery and would not have been required "to adduce proof of reasonableness of the fees beyond attaching detailed invoices as prima facie evidence of the debt." *McRay*, 554 S.W.3d at 707. Here, although Baker filed suit on a sworn account, he has not raised this argument, so we do not consider it.

say the finding of reasonableness and necessity is so weak as to make the judgment clearly wrong and manifestly unjust. *See Figueroa*, 318 S.W.3d at 59. Therefore, there is factually sufficient evidence to support the reasonableness of the post-confirmation fees. *See id.*

Having concluded there was both legally and factually sufficient evidence to support the reasonableness and necessity of the pre-confirmation and post-confirmation attorney's fees, we overrule Jones's first issue.

**Damages**

In the first part of Jones's second issue, he argues the evidence in the record is legally and factually insufficient to support the trial court's calculation of damages. He essentially argues that the trial court made a calculation error because the sum of the attorney's fees awarded in the bankruptcy court's order ($105,850.27) and the post-confirmation fees detailed in Baker's invoice ($43,012.31), less the amount Jones had already paid ($9,750), equals $139,112.58 and not $139,612.58, which was the amount the trial court awarded in the final judgment.

Baker agrees that the amount of damages awarded appears to have been miscalculated and the correct award should be $139,112.58. Appellate courts have the power to modify a trial court's judgment to "make the record speak the truth" where the evidence necessary to correct the judgment appears in the record. *E.g.*, *Lopez v. Bailon*, No. 07-14-00442-CV, 2016 WL 4158034, at *3 (Tex. App.—

16

Amarillo Aug. 4, 2016, no pet.) (mem. op.) (modifying judgment to correct calculation error in damages award); *see also* TEX. R. APP. P. 43.2(b) (court of appeals may modify trial court's judgment and affirm as modified); *Hwang v. Cap. One Nat'l Ass'n*, No. 02-22-00120-CV, 2023 WL 166434, at *6 n.19 (Tex. App.—Fort Worth Jan. 13, 2023, pet. denied) (mem. op.) (modifying judgment to correct calculation error in damages award). Accordingly, we modify the trial court's judgment to delete $139,612.58 and replace it with $139,112.58.

We sustain this part of Jones's second issue.

**Prejudgment Interest**

In the second part of Jones's second issue, he argues the evidence is legally and factually insufficient to support the amount of prejudgment interest the trial court awarded in the final judgment. We agree that there is error in the calculation of prejudgment interest and will remand this issue to the trial court for a recalculation of prejudgment interest.

*Applicable Law*

There are two potential sources for a trial court to award prejudgment interest: (1) general principles of equity under the common law; and (2) an enabling statute, such as Section 304.104 of the Finance Code. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Baker's claim in this

case does not fall within any enabling statute,[4] so the trial court's award of prejudgment interest is governed by equitable principles. *See Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Under either standard, "prejudgment interest begins to accrue on the earlier of[:] (1) 180 days after the date a defendant receives written notice of a claim[;] or (2) the date suit is filed." *Johnson & Higgins*, 962 S.W.2d at 531. Prejudgment interest continues to accrue up to and including the day before judgment is rendered. *See Ventling v. Johnson*, 466 S.W.3d 143, 153 (Tex. 2015).[5]

A claim is "a demand for compensation or an assertion of a right to be paid." *Johnson & Higgins*, 962 S.W.2d at 531 (quoting *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex. App.—Austin 1995, writ denied)). "A defendant has notice of a claim for purposes of prejudgment interest only if the plaintiff's written notice communicates that the plaintiff is claiming a right to compensation and provides enough

---

[4]    Jones relies on Section 304.104 of the Finance Code in his brief, but that statute only applies to wrongful-death, personal-injury, and property-damage cases. *See* TEX. FIN. CODE § 304.101 (stating subchapter, which includes Section 304.104, applies only to wrongful death, personal injury, or property damage cases). However, this does not affect our analysis because the standards for calculating prejudgment interest under the common law and under Section 304.104 are the same. *See Johnson & Higgins*, 962 S.W.2d at 531 (expressly adopting legislature's approach to prejudgment interest and establishing same standard as Section 304.104 under common law).

[5]    The Texas Supreme Court cites Section 304.104 of the Finance Code for this proposition but notes that the common law aligns with the Finance Code. *Ventling*, 466 S.W.3d at 153 n.14.

information that the defendant could plausibly settle the claim without incurring interest." *Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 892 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). "[W]ritten notice that an injured party is seeking specific compensation for a specific injury is enough." *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 385 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

*Standard of Review*

Where, as here, no enabling statute controls, the decision to award prejudgment interest falls within the trial court's discretion. *See Hand & Wrist Ctr.*, 401 S.W.3d at 717. Thus, we review a trial court's factual findings relating to prejudgment interest for an abuse of discretion. *Figueroa*, 318 S.W.3d at 66; *see also Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 785 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.). "A trial court abuses its discretion when it acts without reference to guiding rules and principles or when it fails to analyze or apply the law properly." *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 188 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Under an abuse-of-discretion standard, "we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and failed to do so. *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 427 (Tex. App.—Eastland 2006, no pet.); *see also Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.

19

1992) (orig. proceeding). However, we review de novo the trial court's application of the law to the facts, including the date on which prejudgment interest begins to accrue. *Toshiba*, 180 S.W.3d at 785.

*Analysis*

Jones argues, essentially, that the trial court abused its discretion in determining the accrual date for prejudgment interest and failed to take into account the 180-day notice period.

The trial court did not state the accrual date for prejudgment interest for either the pre-confirmation fees or post-confirmation fees in its findings of fact and conclusions of law or in its final judgment. But the trial court appears to have adopted Baker's calculation of prejudgment interest—the amount of prejudgment interest the trial court awarded, $48,717.43, matches the calculation Baker submitted with his proposed final judgment:

| Pre Judgment Interest Calculation | | | Interest at 5% to December 31, 2020 | |
|---|---|---|---|---|
| | | | | |
| 1/23/2014 | $ | 105,850.27 | 2534 days | |
| Less credit | $ | (9,750.00) | Per diem $13.64 | |
| | $ | 96,100.27 | $ | 34,563.76 |
| amount as of 01/23/2014 | | | | |
| | | | | |
| 6/3/2014 | $ | 43,012.31 | 2403 days | |
| | | | Per diem $5.89 | |
| | | | $ | 14,153.67 |
| total interest | $ | 48,717.43 | | |

20

Baker's calculation calculates prejudgment interest for the pre-confirmation fees from January 23, 2014, the date that the bankruptcy court issued the order approving his requested attorney's fees award. His calculation calculates prejudgment interest for the post-confirmation fees from June 3, 2014, which is the last date he incurred post-confirmation fees, according to the trial court's findings of fact. Under Baker's calculation, both pre-confirmation fees and post-confirmation fees continued to accrue prejudgment interest through December 31, 2020, the date the trial court issued its findings of fact and conclusions of law.

Jones argues the trial court should have calculated prejudgment interest beginning on the date Baker filed suit because there was no evidence in the record that Jones, individually received written notice of Baker's claims. Specifically, he argues the bankruptcy court's order awarding attorney's fees and the June 6, 2014, demand letter did not constitute notice of Baker's claims. Baker does not challenge the existence or contents of these documents, and thus there is no factual dispute, so we must determine whether these documents constituted notice of Baker's claims as a matter of law. *See Toshiba*, 180 S.W.3d at 785–86.

We conclude the bankruptcy court's order approving Baker's application for attorney's fees does not constitute notice of Baker's claims. A claim is "a demand for compensation or an assertion of a right to be paid." *Johnson & Higgins*, 962 S.W.2d at 531 (quoting *Robinson*, 894 S.W.2d at 528). The bankruptcy court's order

entitled Baker to seek payment from Jones but was not in itself Baker's demand for payment or assertion of his right to be paid.[6] The bankruptcy court's order did not communicate to Jones that Baker was claiming a right to compensation. *See Wheelbarger*, 471 S.W.3d at 892.

A writing that only informs the other party that facts potentially giving rise to a claim have occurred or that only indicates a contingent, future liability does not constitute notice of a claim. *See id.* at 892–93; *Toshiba*, 180 S.W.3d at 786; *Robinson*, 894 S.W.2d at 528. In *Wheelbarger v. Landing Council of Co-Owners*, this court concluded an email that described meeting with an attorney, presumably in contemplation of litigation, did not constitute notice of a claim because it "did not make a demand that anyone pay money to anyone else." 471 S.W.3d at 892–93. The letter in question in *Toshiba Machine Co., America v. SPM Flow Control, Inc.*, did not constitute notice of a claim because it urged the recipients to avoid a future claim by curing certain defects—it asked the recipients "to avoid a contingent, future

---

[6] The bankruptcy court's order states in relevant part:

[T]he relief requested in the Application [for attorney's fees] is reasonable and appropriate; it is therefore

ORDERED that [Baker] is awarded compensation as an administrative expense in the Chapter 11 case in the amount of $103,180.00 for services rendered as Chapter 11 [Exquisite Designs'] counsel in connection with this case, and that [Baker] be reimbursed for out of pocket expenses in the amount of $2,670.27 in the Chapter 11 case for a total amount of $105,850.27 for the period of November 5, 2012 to October 4, 2013 . . . .

liability" instead of asserting "an accrued, existing liability." 180 S.W.3d at 786. And in *Robinson v. Brice*, the accident report sent to the defendant's insurer after a car accident, even though it notified the insurer that an accident had occurred and the plaintiff was injured, did not constitute notice of a claim because it did not demand compensation or assert a right to be paid. 894 S.W.2d at 528. The bankruptcy court's order in this case similarly only would have informed Jones of facts potentially giving rise to a claim for attorney's fees by Baker—the order itself was not a demand for attorney's fees or Baker's assertion of his right to be paid.

The June 6, 2014, demand letter, however, does constitute notice of Baker's claims for both pre- and post-confirmation fees. The letter unequivocally stated, "Demand is made for the immediate payment of our fees and expenses," and "[i]f payment is not made immediately, we will pursue actions for collection." The demand letter also listed the amount of the pre-confirmation fees and post-confirmation fees.

Jones has not disputed that the demand letter constitutes a demand for attorney's fees, he only argues that the demand was not made to him *individually*, based on *his* obligations under the guaranty agreement, as opposed to Exquisite Designs' obligations under the engagement agreement to pay Baker's attorney's fees. The demand letter, however, was addressed to "Exquisite Designs c/o Brad Jones," and it began with the greeting, "Dear Mr. Jones." Jones's argument that the

23

demand was not made to him individually, when the demand letter was addressed to him, is unavailing. The demand letter then stated, "The following is a recap of the services rendered regarding your legal issues," and it went on to make a demand for payment. Baker was the president and sole shareholder of Exquisite Designs, and he signed the engagement agreement on behalf of Exquisite Designs. He also signed the guaranty agreement in his individual capacity, promising the "full and prompt payment" of all financial obligating arising under the engagement agreement. The demand letter did not mention the guaranty agreement, but it clearly made a demand for payment and provided enough information about Baker's claim for attorney's fees to have allowed Jones to have settled the claim without incurring interest. *See Wheelbarger*, 471 S.W.3d at 892 (defendant has notice of claim if written notice communicates that plaintiff is claiming right to compensation and provides enough information that defendant could settle claim without incurring interest). Thus, the demand letter constitutes notice of Baker's claims for both pre- and post-confirmation fees.

Jones also argues there is no evidence in the record that Baker sent an invoice, as required by the guaranty agreement. The guaranty agreement stated, "The Guarantors agree to pay the amounts owed by Exquisite Designs to Baker & Associates within fifteen (15) days of receipt of an invoice." But whether Baker

24

complied with this requirement speaks to liability under the guaranty agreement and not whether Jones received sufficient notice of Baker's claims for attorney's fees.

We conclude the June 6, 2014, demand letter constituted notice of Baker's claims for both pre- and post-confirmation fees. Therefore, prejudgment began to accrue 180 days after that date, *see Johnson & Higgins*, 962 S.W.2d at 531, on December 3, 2014, and continued to accrue until the day before the trial court entered its final judgment, October 7, 2021. Baker's calculation of prejudgment interest, which the trial court apparently adopted, did not include the correct accrual date for either pre- or post-confirmation fees, did not delay accrual by 180 days, and did not calculate accrual until the day before the final judgment. Thus, the trial court abused its discretion in awarding prejudgment interest.

Accordingly, we reverse the portion of the trial court's judgment awarding Baker $48,717.43 in prejudgment interest and remand this case to the trial court for a recalculation of prejudgment interest. *See Subsea 7 Port Isabel, LLC v. Port Isabel Logistical Offshore Terminal, Inc.*, 593 S.W.3d 859, 877–78, 883 (Tex. App.—Corpus Christi–Edinburg 2019, pet. denied) (reversing and remanding award of prejudgment interest to trial court for recalculation because trial court abused discretion by determining incorrect accrual date); *see also Wilson v. Wilson*, No. 14-19-00767-CV, 2021 WL 2837293, at *5 (Tex. App.—Houston [14th Dist.] July 8, 2021, no pet.) (mem. op.) (reversing and remanding award of prejudgment interest

25

to the trial court for recalculation in light of modified damages award); *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 353 (Tex. App.—Dallas 2004, pet. denied) (same).

We sustain this part of Jones's second issue.

## Limitations

Lastly, Jones argues that Baker's pre-confirmation fees are barred by limitations, so the trial court erred in awarding Baker these fees.

### *Applicable Law*

A person must bring suit on a cause of action for debt not later than four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). A cause of action generally accrues when facts come into existence that authorize a claimant to seek a judicial remedy. *Emerald Oil*, 348 S.W.3d at 202. A cause of action for breach of a promise to pay, as in a guaranty agreement, accrues when a demand for payment has been made and refused. *Chahadeh v. Regions Bank*, No. 01-15-00656-CV, 2017 WL 3261384, at *4 (Tex. App.—Houston [1st Dist.] July 31, 2017, no pet.) (mem. op.). If the guaranty agreement permits the creditor to sue the guarantor without first suing the principal, the statute of limitations on the principal obligation generally does not affect the guarantor's obligation. *Id.* "[A] guarantor cannot defend an action to recover on a promise to pay by showing that the claim against the principal is barred by the statute of limitations." *Yamin v. Conn,*

26

*L.P.*, No. 14-10-00597-CV, 2011 WL 4031218, at *6 (Tex. App.—Houston [14th Dist.] Sept. 13, 2011, no pet.) (mem. op.).

*Standard of Review*

When a cause of action accrues is a question of law. *Emerald Oil*, 348 S.W.3d at 202.

*Analysis*

Jones argues that Baker's cause of action accrued in 2013 because that is when Exquisite Designs breached the engagement agreement, and a breach of contract claim accrues when the breach occurs.

We first note that the guaranty agreement explicitly stated Jones agreed to waive "all defenses given to sureties or guarantors at law or in equity other than the actual payment of the indebtedness guaranteed hereby." "[A] statute of limitations is an affirmative defense . . . ." *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019) (alteration in original) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015)). Baker, however, did not raise this argument in the trial court or on appeal, but even without relying on this provision, we conclude the statute of limitations for the pre-confirmation fees had not run when Baker filed suit.

The engagement agreement stated that Exquisite Designs agreed to pay a monthly deposit of $750. Baker testified that the last payment he received from

27

Exquisite Designs was in January 2013, so Jones argues that Exquisite Designs breached the engagement agreement then by not paying the monthly deposit. Because a cause of action for breach of contract accrues when the contract is breached, Jones argues, Baker's cause of action accrued in January 2013, and thus the four-year statute of limitations had run by the time Baker filed suit in January 2018.

However, Baker did not sue Exquisite Designs for its breach of the engagement agreement. He sued Jones for Jones's breach of the guaranty agreement, in which Jones agreed to be fully financially responsible for Exquisite Designs' debt. A cause of action for breach of a promise to pay, like a guaranty agreement, accrues when a demand for payment has been made and refused. *Regions Bank*, 2017 WL 3261384, at \*4. Here, the record shows Baker made a demand for payment on June 6, 2014, when he sent Jones the demand letter. The operation of the statute of limitations for a cause of action against Exquisite Designs for breach of the engagement agreement generally does not affect a claim against Jones, as guarantor, unless limitations also operated on the promise to pay. *See id.* Jones cannot rely on the defense that limitations ran on the claim against Exquisite Designs for breach of contract, because, as noted, the two obligations accrued at different times, and Jones cannot defend the action asserted against him personally by showing the claim

28

against Exquisite Designs is barred by the statute of limitations. *See Yamin*, 2011 WL 4031218, at *6.

Jones argues the fact that Exquisite Designs was in bankruptcy proceedings did not affect his liability as guarantor for the outstanding debts, citing *Chahadeh v. Jacinto Medical Group, P.A.*, 519 S.W.3d 242 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In that case, Hassan Chahadeh personally guaranteed loans made to two companies. *Id.* at 244. The companies defaulted on the loans and filed for bankruptcy. *Id.* The lenders sued Chahadeh to collect on the guaranty agreements, *id.*, but Chahadeh argued the lenders could not establish his liability under the guaranty agreements until the bankruptcy court determined the companies' liability on the underlying loans, *id.* at 248. This court determined that Chahadeh's liability under the guaranty agreements was a "separately enforceable obligation" such that he may be held independently liable under the guaranty agreements regardless of the outcome of the bankruptcy proceeding. *Id.*

Jones argues that, similarly, Baker could have sued to enforce the guaranty agreement as soon as Exquisite Designs missed its first monthly payment and thus breached the engagement agreement, without regard to the bankruptcy proceeding. Baker testified at trial that the bankruptcy court did not approve his claim for attorney's fees until January 23, 2014, so he did not sue to collect on the guaranty before that time. Though Baker could have demanded payment at Exquisite Designs'

29

first breach of the monthly payment, he did not demand payment for the pre- and post-confirmation fees until June 6, 2014, and a claim for breach of a promise to pay accrues when a demand for payment is made and refused, not the earliest date that a demand for payment could have been made. *See Regions Bank*, 2017 WL 3261384, at *4. Further, this court in *Jacinto Medical Group* determined Chahadeh's *liability* as guarantor existed separately from the bankruptcy proceeding; the opinion does not address *accrual* of the claim against him. *See Jacinto Med. Grp.*, 519 S.W.3d at 248. That case does not require a different outcome here.

Because Baker's claim for breach of the guaranty agreement did not accrue until at least June 6, 2014, when he demanded payment from Jones, the four-year statute of limitations for a cause of action on a debt had not run when Baker filed suit in January 2018. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(3). Therefore, the statute of limitations does not bar Baker's claims against Jones. We overrule Jones's third issue.

## CONCLUSION

We modify the trial court's judgment to correct a calculation error by deleting the award of $139,612.58 and replacing it with an award of $139,112.58. We reverse the portion of the judgment that awards prejudgment interest and remand to the trial court for a recalculation of prejudgment interest in accordance with this opinion. We affirm the trial court's judgment, as modified, in all other respects.

30

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.